NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**RAYMOND LOWE,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

_____

2020-1564

_____

Petition for review of the Merit Systems Protection Board in No. DC-0752-19-0053-I-2.

_____

Decided:  January 11, 2021

_____

CORINNA ANNA FERRINI, The Law Firm of John P. Mahoney, Esq., Washington, DC, for petitioner.

ERIN MURDOCK-PARK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by JEFFREY B. CLARK, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

_____

Before LOURIE, SCHALL, and MOORE, *Circuit Judges.*

SCHALL, *Circuit Judge*.

## DECISION

On October 10, 2018, the Department of the Navy ("Navy" or "agency") removed Robert Lowe from his position as a GS-0301-13 Regional Dispatch Center ("RDC") Manager at the Navy's Emergency Management Program, Mid-Atlantic Region. The Navy took this action based upon two charges. Charge One was "Careless or Negligent Performance of Duties" and contained six specifications. Charge Two was "Conduct Unbecoming" and contained one specification.

Mr. Lowe timely appealed his removal to the Merit Systems Protection Board ("Board"). Following a hearing, on December 2, 2019, the administrative judge ("AJ") to whom the appeal was assigned issued an initial decision in which she found that the Navy had not proved any of the specifications of Charge One, but that it had proved the single specification of Charge Two. *Lowe v. Dep't of the Navy*, No. DC-0752-19-0053-I-2, 2019 MSPB LEXIS 4415 (Dec. 2, 2019).

Based upon her finding that the agency had failed to Prove Charge One, but that it had proved Charge Two, the AJ mitigated Mr. Lowe's penalty to a reduction in grade to a non-supervisory GS-12 position. *Id.* at *29–35. The AJ's initial decision became the final decision of the Board on January 6, 2020, after which Mr. Lowe timely petitioned for review. We have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9). For the reasons stated herein we *affirm*.

## DISCUSSION

### I.

Charge Two, which the AJ sustained, arose from a conversation that Mr. Lowe had with Meliqua Heath, a subordinate, in the presence of Lisa Duvall, another subordinate.

The conversation took place because Ms. Heath had concerns about her performance and possible removal. The charge stated as follows:

Charge Two: Conduct Unbecoming

Specification a: When having a conversation with Dispatcher Meliqua Heath regarding her performance, with Supervisory Regional Dispatch Center Specialist Lisa Duvall present, you made a comment "If they are not feeding, financing or fornicating with me, then you should not worry about anyone and I am not looking at firing you." This comment was offensive, disrespectful, and/or inappropriate for you as a supervisor to make to an employee. This type of language is conduct unbecoming a Regional Dispatch Center Manager.

*Id.* at *10.

At the hearing, the AJ heard testimony from Mr. Lowe and Ms. Duvall concerning Charge Two. Ms. Heath, who was no longer employed by the agency, was issued a subpoena to testify but failed to appear. In her initial decision, the AJ summarized the evidence relating to Charge Two and set forth her findings relating to the charge:

The agency's charge set forth a single specification regarding the appellant's alleged comment regarding the "3 F's." Heath averred in her statement that the appellant stated "if they are not feeding, financing or fornicating with me, then you should not worry about anyone." The appellant testified that he said some version of this statement to Heath but that he did not say the final "F" word. Duvall originally averred in her written statement that the appellant made the alleged statement, but she later emailed [the Navy officer investigating the work environment at the RDC] and stated the appellant did not say the final "F" word. Duvall

> further testified that the appellant left out the final "F" word during the conversation, but that she did not recall that detail until several weeks after her interview with [the Navy's investigating officer]. She credibly testified that she emailed [the investigating officer] to change her statement because it was the right thing to do, and not due to any pressure from the appellant.

*Id.* at *25–26 (citations omitted). The AJ sustained the specification and the charge of Improper Conduct. In so doing, she stated:

> I find the agency has proven the appellant commented that he lives by the "3Fs," and that his reference to the third "F" clearly indicated its meaning. Even if the appellant did not specifically speak the word "fornicating" or another variant thereof, reference to the word and the comment in general was inappropriate when talking to a subordinate employee. Therefore, I sustain this specification and the charge of Improper Conduct.

*Id.* at *26. As noted, having found that the Navy had failed to prove Charge One, but that it had proved Charge Two, the AJ mitigated Mr. Lowe's removal to demotion to a nonsupervisory GS-12 position. *Id.* at *29–35.

## II.

Our scope of review of a decision of the Board is limited. We will affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We must reverse a decision of the Board if it is not in accordance with the requirements of the Due Process Clause of the Fifth Amendment. *Ward v. United States Postal Serv.*, 634 F.3d 1274, 1278 (Fed. Cir. 2011).

### III.

On appeal, Mr. Lowe makes a single argument. Specifically, he contends that, in sustaining Charge Two, the Board violated his due process rights by relying on a new ground outside the scope of the conduct described in the Notice of Proposed Removal. Citing *Do v. Department of Housing and Urban Development*, 913 F.3d 1089 (Fed. Cir. 2019), he states that "[t]he Board is required to limit its review of an agency's decision to the grounds actually invoked by the agency." Pet'r's Br. 8. According to Mr. Lowe, the Navy violated this rule in his case because the agency's charge was based on Mr. Lowe's use of the specific phrase "feeding, financing or fornicating" in his meeting with subordinates; yet the Board sustained the specification based upon other conduct: Mr. Lowe's acknowledgement that he had used the term "3 F's." *Id.* at 9; *see also id.* at 13–19.

The government contends that the Navy did not need to prove that Mr. Lowe used the exact phrase "feeding, financing or fornicating" to prove that the underlying conduct occurred or that Mr. Lowe engaged in inappropriate behavior. Resp't's Br. 13; *see also id.* at 14–24. The government also contends that Mr. Lowe had the opportunity to meaningfully address the charge against him and that his due process rights thus were not violated. *Id.* at 20, 22–24.

### IV.

In *Do v. Department of Housing and Urban Development*, we stated that the Board can affirm a disciplinary action "based only on the charges actually noticed and relied on by the agency." 913 F.3d at 1094. That rule was not violated in this case.

In Charge Two, the Navy alleged that Mr. Lowe engaged in conduct unbecoming when, in his conversation with Ms. Heath, he referred to "feeding, financing or fornicating with me." The AJ had before her the sworn

statement Mr. Lowe gave during the investigation that led to his removal.  That statement included Mr. Lowe's response to question 26, relating to his conversation with Ms. Heath:

> Have you ever made the following statement[ ]:
>
> "If they are not feeding, financing or fornicating with me, then you should not worry about anyone and that I am not looking at firing you"?
>
> [Answer] I was talking with Ms. Heath, I think, and I believe that Lisa Duvall was in there as well and we were all talking about issues that were going on with Ms. Heath.  I said to her that I live by the three f rules that "if they are not feeding, financing, or I am not going to say the last 'f' word, then you don't have to worry about them" or something close to that.  I never said the last "f" word nor made a reference about firing her.

J.A. 110.  In view of the evidence that was before the AJ, we see no reason to disturb her conclusion that, even if Mr. Lowe did not use the word "fornicating," the meaning of what he said was clear.[1]

As mentioned, Mr. Lowe's claim of a due process violation is based upon the argument that, in order to prove the Conduct Unbecoming Charge, the Navy had to demonstrate that Mr. Lowe used the exact words "feeding, financing or fornicating" when speaking to Ms. Heath.  That is not the law, however.

Although the Court of Federal Claims has stated that an agency is "required to demonstrate that the appellant

---

[1]    Justin Hutchinson, another of Mr. Lowe's subordinates, also averred in a sworn statement that he heard Mr. Lowe make the "feeding, financing or fornicating" comment.  J.A. 103.

engaged in the underlying conduct alleged," *Scheffler v. Department of the Army*, 117 M.S.P.R. 499, 502 (2012), *aff'd* 522 F. App'x 913 (Fed. Cir. 2013), the court did not go so far as to require that the exact language quoted in the underlying specification must be proven in order to sustain the specification. Indeed, in *Russo v. U.S. Postal Service*, 284 F.3d 1304, 1309 (Fed. Cir. 2002), we affirmed the Board's decision upholding an agency's charge of conduct unbecoming even though the conduct relied upon by the Board did not "r[i]se to the level of impropriety asserted by the agency." In that case, the agency's Letter of Decision labeled Mr. Russo's improper conduct as "racist," and the Board agreed with the agency that Mr. Russo acted improperly but chose not to conclude that his improper conduct warranted the label "racist." *Id.* We explained that "the Board will sustain a general charge of misconduct when it finds that an employee engaged in inappropriate behavior, even though it does not find that the behavior rose to the level of impropriety asserted by the agency." *Id.* Accordingly, even if Mr. Lowe did not use the offensive term "fornicating," he engaged in inappropriate behavior when, in front of his subordinates, he stated that he "lives by" the 3 F rules and referred to the third "F" in a way that clearly indicated its meaning.

Mr. Lowe's due process arguments fail. In *Do*, the agency's charge of "negligence of duty" was based on two specifications that Ms. Do hired and then promoted an employee knowing that she did not possess a required degree. 913 F.3d at 1095–96. The Board concluded, however, that Ms. Do was negligent because she failed to investigate whether the employee met alternative requirements. *Id.* at 1097. We held that Ms. Do's due process rights had been violated by the Board's actions because Ms. Do did not have the opportunity to meaningfully address negligence under the alternative requirements and because the Board's departure from the agency's decision was significant. *Id.* at 1097, 1098. Here, Mr. Lowe had an opportunity to

LOWE v. NAVY

meaningfully address the charge against him. Indeed, he admitted that he made a statement using very similar language to that specified by the agency. In addition, the Board's reliance upon Mr. Lowe's statement that he "lives by" the "three f rules" and that his reference to the third "F" clearly indicated its meaning was not a significant departure from the agency's specification.[2]

---

[2]   Mr. Lowe's reliance on *O'Keefe v. U.S. Postal Service*, 318 F.3d 1310 (Fed. Cir. 2002), also is misplaced. In that case, Mr. O'Keefe was removed from his position based on a charge of "improper conduct/fraudulent use of personal identifiers" for using the personal information of a co-worker to help another co-worker obtain a mortgage. *Id.* at 1312. Although the AJ in that case determined that the penalty of removal should be mitigated to a 60-day suspension, the Board disagreed, finding Mr. O'Keefe's conduct was egregious. *Id.* at 1313. We held that the Board abused its discretion because its decision (1) was based upon erroneous facts, and (2) accused Mr. O'Keefe of specific misdeeds that were not within the scope of the charge against him in his Notice of Proposed Removal. *Id.* at 1314–15 ("[D]ue process requires that an employee be given notice of the charges against him in sufficient detail to allow the employee to make an informed reply."). Here, the Navy specified in its charge that Mr. Lowe made an "offensive, disrespectful, and/or inappropriate" comment to a subordinate employee. Although the comment Mr. Lowe admitted to making was not exactly the same as the comment identified in the specification, here, unlike in *O'Keefe*, the conduct the Board considered (the "3 F's" comment) did not significantly depart from, and did not exceed the scope of, the conduct in the specification (the "feeding, financing or fornicating with me" comment). Further, unlike Mr. O'Keefe, Mr. Lowe was given notice of the charges against

CONCLUSION

For the foregoing reasons, the final decision of the Board is *affirmed*.

**AFFIRMED**

COSTS

No costs

---

him in sufficient detail to allow him to make an informed reply.